# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**CHERIE BLACKMORE**                                                        **PLAINTIFF**

**VERSUS**                               **CIVIL ACTION NO. 1:10cv561KS-MTP**

**VAUGHN & BOWDEN, P.A.**                                                 **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Partial Summary Judgment [#39] filed on behalf of the plaintiff, Cherie Blackmore and on a Motion for Summary Judgment/Partial Summary Judgment [#43] filed on behalf of the defendant, Vaughn & Bowden, P.A. The court, having reviewed the motions, the responses, the briefs of counsel, the authorities cited, the pleadings and exhibits filed, finds as follows:

## BACKGROUND

This action arises out of a Complaint for overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C.A. § 201, *et seq.*, filed by Cherie L. Blackmore, a former paralegal in the Defendant law firm, Vaughn & Bowden, P.A. (V&B"). In February 2006, in the aftermath of Hurricane Katrina, Tom Vaughn, Ben Bowden and Eric Wooten, who were partners in the law firm of Allen, Vaughn, Cobb & Hood, withdrew and created the law firm of Vaughn, Bowden & Wooten, PA. They continued practice together until February 1, 2010 at which time Eric Wooten withdrew from

Vaughn, Bowden & Wooten, PA.  The firm remained intact and changed its name to Vaughn & Bowden, PA, its current name.

Blackmore was a paralegal working exclusively for Tom Vaughn in the law firm of Allen, Vaughn, Cobb & Hood.  Upon Vaughn, Bowden & Wooten leaving that firm, Blackmore resigned and accepted employment with Vaughn, Bowden & Wooten and remained with that firm until she terminated her employment the last day of December, 2009.  Throughout her career with the firm, Blackmore worked virtually exclusively with partner, Tom Vaughn, handling silica and asbestos mass tort litigation with very little direction, after the early years, from her managing partner, Tom Vaughn.  As such, it is contended that she maintained her own billing records and had total discretion over the amount of time she allocated for certain tasks.

Blackmore was a salaried employee whose annual salary was $45,800 (in 2007); $50,000 (in 2008); and $50,000 (in 2009).  Blackmore was expected to work up to 40 hours per week.  However, she had some discretion over her own schedule and chose a schedule of 8 hour days, 5 days per week, commencing at 8:15 a.m. and ending at 5:15 p.m., with a one hour lunch break.

V&B contends that it classified Blackmore as an "exempt" employee who was not eligible for overtime pay.  Instead, V&B contends that it awarded "comp time" to its "exempt" employees in lieu of overtime pay.  In her deposition, Blackmore alleges a work environment of long arduous days with the week's work often exceeding 40 hours.

In the event an exempt employee needed to work overtime, the firm policy was that any overtime should be approved in advance by the partner for whom the staff member worked and a form should be submitted to the office administrator outlining the

overtime, i.e., working more than 8 hours in a single work day.  The policy was that when an employee worked more than 8 hours on 1 day, they were afforded time off during the same week at 1.5 hours for every 1 hour they worked overtime.

Blackmore filed her Complaint on December 10, 2010, a full year after her termination from the law firm.  Thus, according to V&B, given the two-year statute of limitations, the pertinent time-frame for overtime demand is December 10, 2008 through December 10, 2010.  However, if Blackmore proves willful action of the employer, the limitations period would run December 2007 through December 2010.  The records of V&B reveal that Blackmore did not report nor request compensation for overtime at any time during the pertinent period.  In fact, all the records of V&B indicate that at no time from December 2007 through December 2009 did she file a request form for overtime and that all the forms reconciling her hours showed that she worked no more than 40 hours per week.

Blackmore admitted in her deposition that she had no basis to establish the overtime to which she purports to be entitled, no specific dates or hours, and is making this claim based on her testimony that she "would stay late all the time and I brought work home with me all the time" and that she is entitled to some amount of overtime. Blackmore has not specified any particular hours on any particular days for which she contends she is entitled to payment or any total number of hours.

V&B has asserted the affirmative defense that Blackmore was an employee who was exempt from the overtime provisions of the FLSA, and that accordingly it is not liable to Blackmore for overtime wages.  V&B contends that it awarded "comp time" to its "exempt" employees in lieu of overtime pay and has moved for summary judgment

on all of Blackmore's claims.  Blackmore has moved for partial summary judgment on the issues of exempt employee and comp time defenses of V&B.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); and *see Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over

facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v.*

*National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **LAW AND ANALYSIS**

The FLSA specifies that overtime compensation is to be paid at a rate not less than one and one-half times the employee's regular rate of pay to a non-exempt employee who works more than forty hours in a regular workweek. 29 U.S.C. § 207(a)(1). This overtime requirement, however, does not apply to employees who fall within one of the exemptions set forth in the Act. An employee bringing an action for unpaid compensation damages has the burden of proving that she performed work for which she was not properly compensated. *Anderson v. Mt. Clemens Potttery Co.*, 328

U.S. 680, 686-87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

An employer who violates the FLSA is liable to the employee in the amount of her unpaid overtime compensation, 29 U.S.C. § 216(b), and each failure by an employer to properly pay overtime for hours worked in excess of forty in a work week represents a new violation of the FLSA. *See Knight v. City of Columbus*, 19 F.3d 579, 581 (11th Cir. 1994) ("[e]ach failure to pay overtime constitutes a new violation of the FLSA.").

As stated above, the statute of limitations for actions under the FLSA is extended to three years for "willful" violations. *See* 29 U.S.C. § 255(a). Employers subject to the FLSA are required to make and keep records of their employees' wages and hours. 29 U.S.C. § 211(c). In this case, the evidence of Blackmore's overtime hours consists of V&B's records and Blackmore's affidavit testimony.

Even though Blackmore minces words regarding what V&B has characterized as a comp time plan, the program that V&B had in place, as described in its second defense, arguably comply with the requirements of the FLSA. *See, Dunlop v. New Jersey*, 522 F.2d 504 (3rd Cir. 1975), vacated on other grounds, 427 U.S. 909 (1976). In *Dunlop*, the court, citing administrative interpretations and regulations of the Wage and Hour Division of the Department of Labor, observed that a policy whereby the employer afforded comp time at the rate of not less than 1½ times the regular rate during the same pay period, is in keeping with the act. 522 F.2d 504, 509. Whether or not any such comp time was actually earned by Blackmore, is a question of fact which would preclude summary judgment if Blackmore is found to be a non-exempt employee. Likewise, whether the comp time policy of V&B was administered in accordance with

DOL guidelines, is a question of fact, based on the record currently before the court.

There are three categories of exempt employees: executive, administrative, and professional. 29 U.S.C. § 213(a)(1). The defendant employer bears the burden of proving an exemption is applicable which excuses the employer from paying overtime wages. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006). *See also, Idaho Sheet Metal Works v. Wertz*, 383 U.S. 190, 206-209 (1966); *Vela v. The City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). All exemptions to the FLSA must be "narrowly construed against the employers seeking to assert them." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). Although the decision as to whether an employee is exempt from the FLSA's overtime compensation requirements is primarily a question of fact, the ultimate decision is a question of law. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330-31 (5th Cir. 2000)

An employee satisfies the duties component of the executive exemption if the employee has a primary duty that is management focused, customarily and regularly directs the work of two or more employees, and has the authority to hire or fire other employees, or make suggestions regarding the hiring and firing of other employees. 29 C.F.R. § 541.100. An employee satisfies the duties component of the administrative exemption if the employee's primary duty consists of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers, and includes the use of discretion and independent judgment with respect to matters that are important to the employer's business. 29 C.F.R. § 541.200.

An employee meets the duties component of the professional exemption when the employee has a primary duty involving work that requires advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized instruction (learned professional exemption) or requires invention, imagination, originality or talent in a recognized field of artistic or creative endeavor. 29 C.F.R. § 541.300(a). The regulation notes that work which requires advanced knowledge is chiefly intellectual in character and traditionally exists in professions such as law, medicine, accounting, engineering and "similar occupations that have a recognized professional status." 29 C.F.R. § 541.301.

In July 2011, Title 29 ("Labor") of the Code of Federal Regulations was amended to include the following provision:

> (7) Paralegals. Paralegals and legal assistants generally do not qualify as exempt learned professionals because an advanced specialized academic degree is not a standard prerequisite for entry into the field. Although many paralegals possess general four-year advanceddegrees, most specialized paralegal programs are two-year associate degree programs from a community college or equivalent institution. However, the learned professional exemption is available for paralegals who possess advanced specialized degrees in other professional fields and apply advanced knowledge in that field in the performance of their duties. For example, if a law firm hires an engineer as a paralegal to provide expert advice on product liability cases or to assist on patent matters, that engineer would qualify for exemption.

This exemption is the only white-collar exemption that expressly addresses the exempt status of legal assistants. 29 C.F.R. § 541.301(e)(7).

In numerous opinion letters issued by the Wage and Hour Division of the U.S. Department of Labor, "it has long been the position of the that […] paralegal employees" are not exempt employees. Wage & Hour Op., FLSA2006-27, p. 4; *see also* Wage &

Hour Op., FLSA2005-9 (Jan. 7, 2005), Wage & Hour Op., FLSA2006-27 (July 24, 2006), Wage & Hour Op., FLSA 2005-54 (December 16, 2005), Wage & Hour Op., August 17, 1979; Wage & Hour Op., September 27, 1979; Wage & Hour Op., June 12, 1984; Wage & Hour Op., April 13, 1995; Wage & Hour Op., February 19, 1998; Wage & Hour Op., 1998 WL 852667 (Mar. 20, 1998).

In the Fifth Circuit, opinion letters issued by the DOL are of "persuasive value" when considered by courts to make decisions. *Gagnon v. United Technisource, Inc.*, 607 F. 3d 1036, 1041, n. 6 (5th Cir. 2010). Indeed, the U.S. Supreme Court has recognized that DOL opinions constitute a body of experience and informed judgment to which courts and litigants may properly turn for guidance. *MDPhysicians & Associates, Inc. v. State Board Of Insurance*, 957 F. 2d 178, 185 (5th Cir. 1992) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) ("[T]He rulings, interpretations and opinions of the [Agency], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.").

V&B argues that the Department of Labor often combines the positions of paralegals and legal assistants interchangeably. The Department of Labor has observed, the term "paralegal" has been applied to a wide range of personnel working within the legal profession, many of which do not require a four (4) year advanced degree and do not engage in independent work, or require advanced specialized training. The Department of Labor regulations state that clearly, paralegals who possess a two (2) year associate's degree from a community college or its equivalent should not be exempt. *See* 29 CFR 541.301(b).

However, the Department of Labor does recognize that a paralegal who possesses advanced training, a four (4) year advanced degree and who specializes in a certain field falls within the professional exemption. The record reveals that Blackmore possesses a four year undergraduate degree from the University of Southern Mississippi in a double major, paralegal studies and psychology. In addition, she has a master's degree in public relations. Further, V&B asserts that her work was essentially exclusive in the mass tort unit of V&BW where she was the senior paralegal and responsible for organizing and directing tasks of other paralegals. Blackmore disputes this.

V&B concedes that many paralegals should not fall within the professional exemption, but maintains that a paralegal that has attained a four year degree in paralegal studies together with advanced training or one who works in a specialized field where she controls her own schedule and activities should be exempt under the learned professional exemption. V&B continues that certainly, there are sufficient factual disputes in this case in regard to this that should be presented to a trier of fact. The court agrees.

Blackmore bears the burden to prove, with definite and certain evidence, that she performed overtime work for which she was not properly compensated. *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 13 Wage and Hour Cas. 2d(BNA) 1545 (7th Cir. 2008). If an employee fails to advise the employer that she worked overtime, she fails to state a cause of action under the FLSA unless the employer, through its supervisory personnel, knows or has reason to believe that the work is being performed and has an opportunity to prevent the work from being performed. 5 C.F.R. § 551.104;

*Abbey v. United States*, 99 Fed.Cl. 430 (2011).

V&B argues that the sole proof of uncompensated overtime presented by Blackmore is her own testimony. Blackmore acknowledged that her schedule was from 8:15 a.m. to 5:15 p.m., 5 days per week with 1 hours off for lunch. However, she testified that she would get to the office at 7 [a.m.] and work until 7 or 8 [p.m.]. V&B insists that Blackmore's testimony on this is unreliable and vague. V&B contends that Blackmore's deposition testimony that she got into the office every morning at 7:00 a.m. and left at 7:00 p.m. is absolutely refuted by alarm entry codes in the building.

For most of 2009, while the law firm was occupying the building at 1617 25th Avenue, the office maintained an alarm system with All Safe Technologies, LLC ("AST").[1] In connection with its services, AST provided a data report that enumerated when and what user disengaged the alarm every morning and engaged the alarm every evening. V&B moved into this building on March 12, 2009 and remained there until December 2009.

The data provided by AST indicates a user, by number, who disengaged the alarm every morning and the user who engaged the alarm every evening, again by user number. Each employee of V&B had a user number and provided to AST their own code that they would enter upon engaging or disengaging the alarm. Accordingly, the system was able to register and preserve which employee opened and closed the building and the times each action was taken. Throughout more than nine months of

---

[1] Blackmore has motion to strike any evidence dealing with AST as well as any testimony of Tom Vaughn. The court, since it is denying summary judgment, will take these matters under advisement and will reconsider them during the presentation of the proof at trial.

2009, when the alarm system was in effect and Blackmore was located at this building, the alarm code indicates that Blackmore only opened the building (disengaged the overnight alarm) on three occasions and all those occasions were substantially close to 8 a.m.

When confronted with this data, Blackmore testified that she did not open and close that office, but regularly took large volumes of work home. Additionally, the record contains affidavits from two other paralegals who worked with Blackmore at V&B who have testified that she took work home and that they regularly saw Blackmore in the office early and late.

Blackmore has testified that Vaughn (her supervisor) knew she was working long hours and taking work home. Vaughn, of course denies this. However, that is exactly why summary judgment for either party is not warranted. Clearly, whether Blackmore worked overtime is a question of fact which will be decided by the trier of fact who will be charged with the responsibility of determining credibility. Therefore, as with the issue of whether or not Blackmore was an exempt employee, and whether V&B's overtime policy complied with DOL requirements, summary judgment is precluded as to this issue.

As for the issue of the appropriate statute of limitations, the court concludes that summary judgment is not warranted either. Blackmore has testified that her employer was well aware that she was allegedly taking work home. As stated above, V&B denies any knowledge of this. However, a question of fact has been identified which will require resolution by the trier of fact, not the court acting as a matter of law.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Partial

Summary Judgment [#39] filed on behalf of the plaintiff, Cherie Blackmore and the Motion for Summary Judgment/Partial Summary Judgment [#43] filed on behalf of the defendant, Vaughn & Bowden, P.A. are both denied.

IT IS FURTHER ORDERED AND ADJUDGED that all other pending motions, specifically document numbers 45, 46, 47, 48 and 64 are denied subject to reconsideration at the trial of this matter upon presentation by the original sponsor of each motion.

SO ORDERED AND ADJUDGED this the 7th day of June, 2012.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE